FILED BY ____ D.C.
JUL 30 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

XAVIER LATRELL SMITH,
Petitioner

VS.

UNITED STATES OF AMERICA,
Respondent

TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

The petition of XAVIER LATRELL SMITH shows:

1. Petitioner makes this application for a Writ of Habeas Corpus on the grounds that he is unlawfully detained and restrained of his liberty by the United States Of America.

2. Petitioner is now in the custody of the Respondent at the Federal Detention Center in Miami, Florida.

3. The cause or pretext of Petitioner's detention and restraint is by a guilty verdict from trial by jury on March 8TH, 2024 on all counts in the indictment, i.e., COUNT 1 - Conspiracy to Commit Sex Trafficking of a Minor in violation of 18 U.S.C. § 1594(c); COUNT 2 - Sex Trafficking of a Minor in violation of U.S.C. § 1591(a)(1), (b)(2), (c) and 18 U.S.C. §2; COUNT 3 - Transportation of a Minor to Engage in Sexual Activity in violation of 18 U.S.C. §2423(a) and 18 U.S.C. §2; COUNT 4 - Coercion And Enticement of a Minor to Engage in Sexual Activity in violation of U.S.C. §2422(b) and 18 U.S.C §2; and COUNTS 5 and 6 - Commission of Sex Offense by Registered in violation of 18 U.S.C. §2260A. (DE 174)

## I. FACTUAL AND PROCEDURAL BACKGROUND

### a. FACTS

From December 23rd, 2022, through January 10th, 2023, the Minor Victim was trafficked by Petitioner and his co-defendant for commercial sex in Texas, Louisiana and Florida. The Minor Victim was reported as a runaway by her mother in Texas the exact day Petitioner picked her up from a friends house where she stayed for several weeks after her involvement in another Federal sex trafficking case where she was a cooperating witness. See United States V. Jenkins, 23-CR-000342 (N.D. Tex.) The Minor Victim was being advertised for commercial sex on the website Megapersonals, a website commonly used for prostitution. Minor Victim's commercial sex advertisements were published and bumped by Minor Victim and co-defendant on the co-defendants Megapersonals account. Law enforcement messaged with the phone number listed in the advertisement (the "Advertisement Number"), denied that they were affiliated with law enforcement and learned that the Minor Victim was in Miami near 27TH Avenue. [Exhibit A]. Based on this information, law enforcement canvassed the area of Northwest 27TH Avenue in Miami-Dade County and established surveillance at the Budget Inn Hotel located on NW 27TH Ave. – a known area for prostitution. Petitioner was seen exiting a hotel room, enter a Chevrolet Equinox, and began driving. A traffic stop was conducted by Task Force Officer David Quintas COVET ID: and Petitioner was identified as the Equinox's driver and sole occupant. Petitioner was placed in custody by Task Force Officer Quintas and questioned about his paper tags, his reason for being in Miami, and his affiliation with Minor Victim. Petitioner answered all of Task Force Officer Quintas questions truthfully, denied a search of his vehicle and stated they "could not search his car without a warrant" and told Task Force Officers David Quintas and JP Valentin multiple times "do your job" and requested counsel.

Approximately an hour after the Petitioner left the Budget Inn, the Minor Victim exited his same hotel room. She was subsequently recovered by law enforcement. The Minor Victim told law enforcement she cooperated in another Sex Trafficking case See United States V. Jenkins, 23-CR-000342 (N.D. Tex.) against her former pimp. Minor Victim further stated she was "receiving threats and didn't feel safe in Texas", denied that Petitioner was HER pimp, that she decides IF, WHEN, and HOW long she wants to work. Minor Victim said Petitioner was a friend and co-defendant was family that she "cares about them, will protect them, their kids need them", Minor Victim would also go on to say she's "Not doing this in court, not putting my face on the stand" "I WILL LIE", and that "they didn't take advantage of me." [Exhibit ]

While in custody and in the back seat of a MDPD vehicle, FBI Special Agent Joshua Youngblood came onto the scene advised Petitioner of his Miranda Rights and began to interrogate him in the absence of a lawyer which had been requested by Petitioner to TFO David Quintas. Petitioner answered all of FBI Special Agent Joshua Youngblood questions, denied a search of his vehicle multiple times, FBI Special Agent Youngblood threatened Petitioner that he would "get a judge to sign off on a warrant anyway, It'd be best if you just cooperate". After multiple denials of searching Petitioner's vehicle, Petitioner requested a lawyer for the SECOND time in custody which Miami-Dade Police Department and the FBI contravented Petitioner's Fifth Amendment Right. FBI Special Agent Joshua Youngblood later returned with Petitioners cell phone to "unlock" his phone so Petitioner could have someone retreive his vehicle, yet this was a misleading tactic to gain access into Petitioners "locked" cell phone. Due to the pressure and superior authoritative presence of the FBI is violative of Constitutional protection. Petitioner didn't give a knowing, Intelligent, Voluntarily Consent of his waiver to his rights. (1.) The number of MDPD Police Officers, Task Force Officers, FBI Special Agents on the scene. (2.) The intimidating and threatening questions asked by officers.

(3.) The frightening sight of weapons drawn upon Petitioner by TFO David Quintas. (4.) Petitioner was already in custody during custodial interrogation. (5.) Fraudulent and misleading tactics to obtain statements and evidence by TFO David Quintas and FBI Special Agent Joshua Youngblood. (6.) Evidence obtained or fruits by getting Petitioners code to I-Phone thru coercion, as to what was said and done by Petitioners consent. Petitioners invocation of his Fifth Amendment Right was contravented and willfully neglected by both State and Federal officers. While fully complying with officers Petitioner willingly, without any attempt to not cooperate submitted to authority. Consent is invalid if it is granted in submission to authority. Pursuant to an overbroadly federal search warrant after Petitioner was arrested in State custody, Petitioner's phone was overbroadly extracted, with Federal Agents having a "TARGETED SEARCH" for the time period of the prostitution conspiracy. Petitioner was taken to Turner Guilford Knight Correctional Center, then later housed at Metro-West Detention Center. [Exhibit A] [Exhibit C]

II. PROCEDURAL BACKGROUND

a. On March 21st, 2023, Petitioner was charged by indictment with Conspiracy to Commit Sex Trafficking, in violation of Title 18, United States Code, Section 1594 (c) (COUNT 1); Sex Trafficking of a Minor, in violation of Title 18, United States Code, Section 1591 (COUNT 2); Transporting a Minor to Engage in Sexual Activity, in violation of Title 18, United States Code, Section 2423 (b) (COUNT 3); Coercion and Enticement of a Minor to Engage in Sexual Activity, in violation of Title 18, United States Code, Section 2422 (b) (COUNT 4); and commission of a Sex offense by a Registered Sex Offender, in violation of Title 18, United States Code, Section 2260A (COUNTS 5 AND 6). [DE 3]

b. On April 4th, 2023, Petitioner appeared for the first time in the Southern District of Florida [DE 8], the Court held a pretrial detention hearing and held Petitioner based on his danger to the community and risk of flight. [DE 11]

c. On April 11th, 2023, Petitioner was assigned Federal Public Defender's Micki Bloom

and Julie Holt [DE 13 & 14] and was set for trial June 5TH, 2023. [DE 15]

d. Petitioner met with counsel on April 18TH, 2023 and discussed the verbal plea agreement offered from the Government of 20 years and the scheduled trial date.

e. On May 30TH, 2023, Petitioner met with his counsel to review his discovery and that a continuance was filed for his trial for October. Petitioner was unable to review his discovery thoroughly because he was in the S.H.U (special housing unit) for a violation that was later expunged.

f. On July 11TH, 2023, Petitioner met with his counsel and stated his "annoyance and frustration" about not seeing his discovery and the lack of motions being filed in his defense. Counsel agreed to return on July 13TH, 2023 to let Petitioner review his discovery fully and thoroughly. Upon reviewing his discovery on July 13TH, 2023, Petitioner discovered that the Minor Victim was a cooperating witness in another Sex Trafficking case out of Dallas, Texas. See United States V. Jenkins, 23-CR-000342 (N.D. Texas). The Minor Victim received threats and didn't feel safe in Texas, she had a gun put to her head, was raped and labeled a "snitch" by Jenkins and his affiliates.

g. Around late July, Petitioner filed an abundance of Pro-Se motions regarding inspection and copying all discovery material, "reveal the deal" pertaining to Giglio material, to suppress statements and evidence obtained through illegal search & seizure, impeaching matter, etc. [DE 44, 46-50]

h. Petitioner would meet with his counsel on or about August 4TH, 2023 to discuss filed motions by Petitioner, and that wouldn't adopt-and-amend his motions because they fell within the scope of the Standing Discovery Order. Petitioner advised counsel he would write to the Court to dismiss them as counsel. [DE 64]

i. On August 23RD, 2023, Honorable Judge Beth Bloom appointed CJA Frank Quintero Jr, after concerns with prior counsel's representation; namely "a lack of trust [] in counsel's representation, dissatisfaction with [] counsel's preparation of the case, and an unwillingness to work with [] counsel... among other concerns." [DE 58, 59] The heart of the issues was counsels refusal to file Petitioner's motions because, counsel

explained, the motions filed by Petitioner were duplicitous of the Standing Discovery Order. [DE 64] Meanwhile Petitioner argued that the Government was failing to comply with Rule 88.10 Criminal Discovery and the Standing Discovery Order.

j. On September 26th and 27th, 2023, Petitioner contacted Mr. Quintero via e-mail requesting that he file a Motion for Reconsideration of Bond and a Motion to Suppress Evidence. Mr. Quintero did not file, because his belief was that there was not a good faith basis to do so; despite Petitioners claims of "submitting to authority" and "unprofessional conduct by arresting officer Quintos and FBI Special Agent Youngblood."

k. On November 15, 2023 Mr. Quintero filed a renewed Motion to Withdraw as counsel citing irreconcilable differences based on Petitioner's feeling that Mr. Quintero wasn't trying to represent him after his SECOND motion to withdraw as counsel and a breach of Petitioner's Rights. After a hearing, the Court denied the motion [DE 109]

l. On February 2nd, 2024 Petitioner saw Mr. Quintero very briefly, and let one of his partners from his firm go over more Discovery. Petitioner pointed out and requested all of evidence extracted from Minor Victims in multiple copies prior to his trial.

m. On February 20th, 2024 Petitioner had a calendar-call and Mr. Quintero wasn't present due to a "stomach virus" and was replaced by his partner Juan Pablo Brodie who Petitioner never seen before. Petitioner had written a letter that was read aloud by Honorable Judge Beth Bloom [DE 122]; that Petitioner was "eager to see the Giglio material, and what type of defense his lawyer/counsel was going to present" due to the lack of legal visits leading up to Petitioners trial. Also during the calendar-call AUSA Abbie Waxman intentionally used evidence from the Jenkins case; "a threat Jenkins texted to Minor Victim's mother" [DE 128 Exhibit List #6 AT&T records]

n. Following a five-day trial, where the Minor Victim switched her initial statements, lied about having a ID, didn't tell the jury her purpose of going to her family who resided in Miami, and said she only spoke to Federal Agents, but court records it was at least four (4) times. Mr. Quintero failed to try to impeach the witness, failed to subpoena witnesses that would be in Petitioner's favor. On the fourth day of trial March 7th, 2024 Petitioner stated "I'm not receiving a FAIR

[illegible]

trial, and the Minor Victim, officers, agents, and the prosecutor are lying under oath." [DE 173] Petitioner initially stated on the record "I want to testify", Mr. Quintero would go on to say he "strongly advises his client don't testify" the Court gave Petitioner 30 mins to talk with his Counsel. After a heated argument, Petitioner ultimately changed his mind to not testify because according to his counsel "the judge will give you a life sentence if you testify." On March 8TH, 2024 the jury returned a guilty verdict against Petitioner and co-defendant.

o. Mr. Quintero filed "Defendant's Renewed Motion for Judgment of Acquittal and, Alternatively for New Trial" on March 29TH, 2024. [DE 200]. Arguing frivolous and bogus reasons for New Trial such as "quick jury verdict" and that Minor Victim "chose" to do acts. Mr. Quintero didn't mention the "Berry Rule" or the "Larrison Test", nor mention Defendant's need only show "Reasonable Likelihood" that false testimony could have affected Jury's judgment, Mr. Quintero also failed to mention the Government's violation to Rule 88.10 Criminal Discovery; disclosure of Giglio material; violations of Fed.R.Cr.P Rule 16 & 41(e)(2)(B)

p. On April 5TH, 2024, Petitioner filed a Notice of Human Rights Violations and a Bivens suit claiming Civil Rights Violations against the Government, law enforcement officers David Quintas and JP Valentin, Federal Agent Joshua Youngblood, prior counsel Micki Bloom and Julie Holt, Petitioner's public defender in his state case. See Smith V. Abbie Waxman, et al., 2024-CV-21186-BB [DE 1]. Following the filing of Petitioner's Bivens suit, Mr. Quintero e-mailed Petitioner and displayed unprofessionalism and his frustrations stating "I have never seen any client try so hard to get a life sentence as you have" and "in my opinion 'put the last nail in your coffin' and convince the Judge to give you a life sentence.'" [DE 217 Exhibit E] Petitioner would go on to file a Motion to Dismiss Counsel & Appoint New Counsel Based on a Conflict of Interest & Violations of American Bar Association Attorney Ethical Code of Conduct and Legal Canons [DE 205] Petitioner would go on to state that "Mr. Quintero presented ZERO DEFENSE, called NO WITNESSES on his behalf, failed to subpoena the Minor Victim's Mother and agents involved in the United States V. Jenkins, Case no. 23-CR-000342. Petitioner

also filed a Florida Bar Inquiry / Complaint and a Motion for Leave to file an amended complaint in his Civil Rights suit. [DE 200]

9. On April 12TH, 2024 Petitioner filed Violations of ABA Model Code of Judicial Conduct and Legal Canons claiming violations in this Court. [DE 207] for displaying bias, prejudice during Trial when Petitioner wrote that Honorable Judge Beth Bloom looked "annoyed" and was seen "huffing-and-puffing" when Petitioner stated he "wasn't receiving a fair trial and that the Government, Minor Victim, officers and agents were lying under oath."

4. This detention and restraint is unlawful because contrary to the U.S. Constitution:

REASONS AND CHALLENGES TO DETENTION AND SUPPORTING CASE LAW

I. AMERICAN ADVERSARY SYSTEM

"The legal framework of the United States is commonly referred to as an adversarial system. Based on English common law, it established normative procedures that mediate conflicts between opposing parties, with a goal of minimizing the impact of governmental actions on entrenched personal rights. In an adversarial system, the aggrieved party alleges there has been an injury, and is seeking relief from the defendant. In the American version of this system, the advocates for the involved parties will make their arguments before an impartial third party, which can be a judge or a jury. In either case, the judge is responsible for ensuring that defendants are entitled to their day in court, that their established rights are not violated (which provides a check against the power of the government), and that the case will be assessed on its merit, based on the arguments presented and how the law applies. However, critics of the system have proffered that the system is fraught with inconsistencies and biases, and believe it fails its core mission of uncovering the truth. This has led some to advocate for a system based on a generalized ideal of an inquisitorial system ... The Constitution of the United States, including the Bill of Rights, included provisions for fair trials, right to counsel, and amendments that accentuated the desire for individual protection against the power of the state. Through its many influences, the American adversarial system is now a complex web of legislation and court decisions."

LEGAL STANDARD

"The privilege against self-incrimination, the essential mainstay of the American

adversary system, has it's constitutional foundation in the respect a government, state or federal, must accord to the dignity and integrity of its citizens."
86 S.Ct. 1602, 16 LED2D 694, 384 US 436 MIRANDA V. ARIZONA

- In the American adversary system of criminal justice in which the parties contest all issues before a court of law, the need to develop all relevant facts is both fundamental and comprehensive; the ends of criminal justice would be defeated if JUDGMENTS were to be founded on a partial or speculative presentation of the facts; the very integrity of the judicial system and public confidence therein depend on FULL DISCLOSURE OF ALL THE FACTS, within the framework of the rules of evidence; to ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by prosecution or defense.
UNITED STATES V. NIXON 94 S.Ct. 3090, 41 LED 2D 1039, 418 US 683

- The American adversary system of criminal proceedings, distinguishing itself at the outset from the inquisitorial system recognized in some countries, commences when an individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any way; at this point the safeguards erected about the privilege against self-incrimination come into play.
MIRANDA V. ARIZONA 86 S.Ct. 1602, 16 LED 2D 694, 384 US 436

- The right to present a complete defense under the Sixth Amendment is an essential attribute of the adversary system.
897 F.3d 673 :: UNITED STATES V. LIM (5TH CIR. 2018)

- In the American adversary system of justice, each litigant remains under an abiding duty to take the legal steps that are necessary to protect his or her own interests.
281 F.3d 297 :: Claremont Flock Corp. V. Alm (1ST Cir. 2002)

II. Smith's Fourth Amendment Right Was Violated When His Effects (I-Phone) Was Illegally Seized After His Undisputed Compliance With Officers And Agents Commands [Exhibit A]; Smith Didn't Make A Knowing, Intelligent, Voluntary Intentional Waiver Of His Constitutional Right To Counsel Rather It Was A Submission To Authority [Exhibit B]; Evidence And Statement's Obtained From Smith Was The Effect of "Fruits Of The Poisonous Tree" Doctrine; Bane Act Claim; Exclusionary Rule Violation; There Wasn't "Inevitable Discovery"; Indictment Should've Been Dismissed Due To Defective Indictment; Smith Was Denied "Full And Fair Opportunity To Litigate"; Overbroad warrant without temporal of limitation

LEGAL STANDARD

- "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law."
  Austin B. V. Escondido Union School Dist, 149 Cal. App. 4TH 860, 883, 57 Cal. Rptr. 3d 454 (2007) (citing Jones V. Kmart Corp., 17 Cal. 4TH 329, 334, 70 Cal. Rptr. 2d 844, 949 P. 2d 941 (1998)
- "One of the well established exceptions to the probable cause and warrant requirements is a search is conducted pursuant to voluntary consent."
  United States V. Garcia, 890 F.2d 355, 360 (11TH Cir. 1989)
- In a 2023 Eleventh Circuit case, that Court held that because of the unlawful seizure of the cellphone, [her] subsequent statements to law enforcement after being confronted with the cellphone must likewise be suppressed as fruit of the poisonous tree. See United States V. Mejia-Velazquez 2023 U.S. Dist. LEXIS 2265 (11TH Cir. 2023) See Wong Sun V. United States, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); Brown V. Illinois, 422 U.S. 590, 601, 95 S. Ct. 2254, 45 L. Ed 2d 416 (1975); United States V. Crosby, 739 F.2d 1542, 1549 (11TH Cir. 1984)

• "The exclusionary rule, which bars the admission of evidence in violation of the Constitution, extends beyond the direct products of police misconduct to evidence derived from the illegal conduct, or 'fruit of the poisonous tree.'"
UNITED STATES V. TERZADO-MADRUGA, 697 F.2d 1099, 1113 (11TH CIR. 1990)

• "A seizure by means of show of authority requires both a show of authority and submission to that authority."
CALIF. V. HODARI D. 499 U.S. 621, 628-29, 111 S.Ct 1547, 113 L.Ed 2d 690 (1991)

• "A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad."
UNITED STATES V. TRAVERS, 233 F.3d 1327, 1329 (11TH CIR. 2000)

• "Is aimed at preventing 'general, exploratory rummaging in a person's belongings."
UNITED STATES V. WUAGNEUX, 683 F.2d 1343, 1348 (11TH CIR. 1982) (quoting Coolidge V. New Hampshire, 403 U.S. 443, 467 (1971))

• "A description is sufficiently particular when it enables the searches to reasonably ascertain and identify the things authorized to be seized." WUAGNEUX, 683 F.2d at 1348

• "The exclusionary rule bars evidentiary "fruit" obtained as a direct result of an illegal search or an illegal coercive interrogation."
UNITED STATES V. BROOKINS 614 F.2d 1037, 1041-42 (5TH CIR. 1980)

: Fourth Amendment case law makes it clear to [be] "seized", a person must do more than stop temporarily in response to police authority. The person must actually submit to police authority.

• See UNITED STATES V. MITCHELL, 565 F.3d 1347, 1350 (11TH CIR. 2009 (stating that "even a seizure based on probable cause is unconstitutional if the police act with unreasonable delay in securing a warrant.") (citation omitted)

• Where evidence consisting of fruits of unreasonable search or seizure was sole or primary basis for conviction, it was necessary for conviction to be reversed."
MAPP V. OHIO, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081, 1961 U.S. LEXIS 812 (1961) reh'g denied, 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed. 2d 72, 1961 U.S.

LEXIS 796 (1961)
• "FRUIT OF THE POISONOUS TREE"
46 L.Ed 2d 903 Progeny of Miranda
• See Blake, 868 F.3d at 974 (holding that warrants issue to Facebook were overbroad, in part, because "the warrants should have requested data only from the period of time during which [the defendant] was suspected of taking part in the prostitution conspiracy.")
• Petitioner was deprived "full and fair opportunity" because his trial counsel failed to file a pretrial suppression, yet refused stating "there is no good faith basis to file any motion to suppress or to dismiss." [DE 217 e-mail exchange 12/27/2023 12:36 PM] or made an objection at trial to the introduction of evidence obtained in violation of the Fourth Amendment. The procedure withheld from the petitioner was important or could have made a difference in the outcome, there is considerable agreement that the Petitioner lacked an opportunity for full and fair litigation.
• AGEE V. WHITE, 809 F.2d 1487, 1490 (11TH CIR. 1987) (Stone no bar to habeas corpus consideration because state appellate court "ignored" Petitioners Fourth Amendment claim)
• Petitioner filed PRO-SE motions to dismiss [DE 81] and motion to suppress evidence [DE 46 & 79] but trial counsel refused to adopt-and-amend motions.

III. Smith's Fifth Amendment Was Violated When TFO Quintas And FBI Special Agent Youngblood Didn't Scrupulously Honor Smith's Request To Halt Interrogation Or Obtain Counsel And His Incriminating Statements Were Used Against Him At Trial; Miranda Rule Violation; Edwards Rule Violation; Indictment Clause Violation Due to Defective Indictment [DE 3]; Double Jeopardy Clause Violation; Prosecutorial Misconduct

LEGAL STANDARD

• "State prisoner has no right to be taken from state custody and brought before District Court to answer Federal charges as a part of his right to speedy trial where Federal detainer had been filed but no charges were pending."
CROW V. UNITED STATES, 323 F.2d, 1963 U.S. App. LEXIS 3881 (8TH CIR. 1963)

• "The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which FIRST takes the subject matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, BEFORE the other court shall attempt to take it for its purpose."
258 U.S. 254, 260, 42 S.Ct. 309, 310-311, 66 L.Ed 607

• Double Jeopardy Clause is very clearly the spirit of the Constitution to prevent second punishment under judicial proceedings for same crime, so far as common law gave that protection.

• "noting the unavailable coerciveness of police questioning after an accused has requested the presence of counsel and holding that any evidence obtained as a result of appellee's Fifth Amendment Right to have Counsel present during interrogation cannot be introduced against him at trial.
UNITED STATES V. DOWNING, 665 F.2d 404, 409 (1ST CIR. 1981)

• "The Fifth Amendment protects a defendant's right to be tried only on the charges returned by the grand jury." See Stirone V. United States 361 U.S. 212, 80 S.Ct. 270 4 L.Ed 2d 252. Under the Fifth Amendment, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." A district court constructively amends an indictment if its jury instructions broaden the possible grounds for conviction beyond those alleged in the indictment. UNITED STATES V. KELLER, 916 F.2d 628, 634 (11TH CIR. 1990). The indictment alleged that Petitioner Smith sex trafficked a minor, M.T., "knowing, and in reckless disregard of the fact, that M.T. had not attained the age of 18 years", in violation

"SEE ATTACHED"

Of 18 U.S.C § 1594 (c) and § 1591 (a)(1), (b)(2), and (c); transported a minor to engage in sexual activity, in violation of 18 U.S.C § 2423 (a) and 18 U.S.C § 2; Coerced and Enticed a minor to engage in sexual activity in violation of 18 U.S.C 2422 (b); Committed sex offense by registered sex offender in violation of 18 U.S.C § 2260 A. The indictment contained no allegation that Petitioner Smith violated § 1594 (c); 1591; 2423 (a); 2422 (b); 2260 (A) by having had a reasonable opportunity to observe his Minor Victim. See U.S.C § 1594 (c); 1591; 2423 (a); 2422 (b); 2260 (A). Yet, in its jury instructions the district court explained that "if the government proved beyond a reasonable doubt that Smith knew, or recklessly disregarded the fact, that M.T. had not attained the age of 18 years." [DE 179] A constructive amendment is per se reversible error. UNITED STATES V. FIGUEROA, 666 F.2d 1375, 1379 (11TH CIR. 1982) Because a constructive amendment is per se reversible error, FIGUEROA, 666 F.2d at 1379, Petitioners Smith convictions for Conspiracy to commit sex trafficking, Sex trafficking of a minor, transporting a minor to engage in sexual activity, Coercion and Enticement of a minor to engage in sexual activity and commission of a sex offense by registered sex offender must be reversed. In a 2019 Eleventh circuit case, that Court reversed the conviction of sex trafficking of a minor because a constructive amendment is per se reversible error. See 770 Fed. Appx. 563 UNITED STATES V. ROBERTS (11TH CIR. 2019) April 30, 2019

- "also provides a statement of facts and circumstances that give notice of the offense to the accused."

UNITED STATES V. WALKER, 490 F. 3d 1282, 1296 (11TH CIR. 2007)

- "Critical safeguard" associated with right to remain silent in Miranda "right to cut off questioning"

UNITED STATES V. RAMBO, 365 F. 3d 906 (10TH CIR. 2004)

First, the court stated that the **indictment clause** requires that every element of an offense appear in an indictment, 20 F.3d at 146-47 (*citing United States v. Carll,* 105 U.S. (15 Otto) 611, 26 L. Ed. 1135 (1881)), and that the lack of an element in the indictment cannot be cured by later amendment or instructions to the jury. 20 F.3d at 146 (*citing Stirone v. United States,* 361 U.S. 212, 216-19, 80 S. Ct. 270, 272-74, 4 L. Ed. 2d 252 (1960)). By contrast, noted the court, mere sentencing facts need not be alleged in the indictment. 20 F.3d at 146 (*citing United States v. Vasquez-Olvera,* 999 F.2d 943, 944-45 (5th Cir.1993)). 9 From these two premises, the court concluded:



© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

51874510

IV. Smith's Sixth Amendment Right Was Violated Due To A Defective Indictment, Smith Was Deprived His Right To Compulsory Process By Trial Counsel, Smith Was Denied Effective Assistance of Counsel Due To Trial Counsel Failing To Adopt And Amend Smith's Filed Meritorious Pro-Se Motions [DE 46-56]; Failing To Investigate Smith's Case and Discuss Possible Defenses; Giglio Violation within Confrontation Clause; Prosecutorial Suppression and Misconduct; Smith's Trial Counsel Failed To Challenge Constitutional Violations, Failed To Challenge Governments Failure To Fulfill Discovery Obligations And Represented Smith With A Continuous Conflict of Interest And Unprofessionalism [DE 217]; "Berry Rule" Violation

LEGAL STANDARD

- "Right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms right to present defense, right to present defendant's version of facts as well as prosecutions to jury so it may decide where truth lies; just as accused right to confront prosecution's witnesses for purpose of challenging their testimony, he has right to present his own witnesses to establish defense; this right is not unlimited, however, and defendant does not have absolute right to present evidence, no matter how minimal its significance or doubtful its source rather, right itself is only implicated when evidence defendant seeks to admit is relevant and material, and vital to defense
JACKSON V. NEVADA, 688 F.3d 1091, 2012 U.S. App. LEXIS 16292 (9TH cir. 2012) rev'd remanded, 569 U.S. 505, 133 S.Ct. 1990, 186 L.Ed. 2d 62, 24 Fla. L. Weekly Fed. S 232, 2013 U.S. LEXIS 4166 (2013)
- "Refusal to reveal any said agreements constitutes a violation of the Confrontation clause of the Sixth Amendment of the United States Constitution."
GIGLIO V. UNITED STATES, 405 U.S. 150 S.Ct. 763, 31 L.Ed 104 (1972)

- "Federal courts possess the power and duty to dismiss federal indictments obtained in violation of the Constitution or laws of the United States[.]"
  UNITED STATES V. PABIAN, 704 F.2d 1533, 1536 (11TH CIR. 1983)
- "the remedy should ordinarily be limited to preventing the prosecution from using illegally obtained evidence against the defendant."
  UNITED STATES V. MORRISON, 449 U.S. 361, 364-65, 101 S.Ct. 665, 66 L.Ed. 2d 564 (1981)
- "It guarantees him 'compulsory process for obtaining witnesses in his favor.'"
  UNITED STATES V. VALENZUELA-BERNAL, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed. 2d 1193 (1982)
- Judgment of conviction is unconstitutional where accused is forced to trial without fair opportunity to procure attendance of witnesses.
  PAONI V. UNITED STATES (3RD CIR. 1922)
- "The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense."
  YARBOROUGH V. GENTRY, 540 U.S. 1, 5, 124 S.Ct. 1, 157 L.Ed. 2d 1 (2003) (per curiam) (first citing WIGGINS V. SMITH, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed. 2d 471 (2003); and then STRICKLAND V. WASHINGTON, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).
- "Counsels errors was so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
  at 687, 104 S.Ct. 2052. Richter, 562 U.S. at 104
- "Conflict of interest adversely affected counsels performance." [DE 217]
  FEGG V. UNITED STATES 253 F.3d 1274, 1277 (11TH CIR. 2001)
- See Berry V. Georgia 511 (1851)

VI. Smith's Eigth Amendment Right Was Violated While Being A FDC-Miami Detainee And Not Violating Any Regulations Of The Institution But Still Receiving "Punishment" While Being Subjected To Isolation Being Locked In A Large Closet Sized Room With No Drinking Water, Limited Time To Shower, No Books Being Distributed To Read, Leaving Smith With Nothing To Do For 20+ Hours Per Day Excerbating His Depressed Mental State Losing His Will To Be Alive And The Mental Strain From The Loss Of Family Connections

LEGAL STANDARD

• "Punishment" not allowed for Pre-Trial Detainees.

Occhino V. United States, 686 F.2d 1302 (8TH Cir. 1982)

• "Courts have held that when the conditions of isolated confinement are disproportionate to the offense involved or used for an improper means it thus runs afoul of the Eigth Amendment."

Wagner V. Hanks, 128 F.3d 1173 (7TH Cir. 1997); Rafael L.O. V. Tsoukaris, 2020 WL 180843 (D.N.J 2020)

• "To a prisoner, this prospect of additional time behind bars is not some theoretical or mathematical concept."

Barber V. Thomas, 560 U.S. 474, 504, 130 S.Ct. 2499, 177 L.Ed 2d 1 (2010)

• "Any amount of jail time" is significant

Glover V. United States, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed 2d 604 (2001)

• "Downward variances have been consistently granted for even lesser extreme conditions than detainees are currently suffering, including reduction of sentences and double time jail credits."

United States V. Ortiz LEXIS 87055 (3RD Cir. 2007)

VI. Smith's Thirteenth Amendment 42 U.S.C § 1981 Equal Rights, Full And Equal Benefit Of All Laws And Proceedings For The Security Of Persons And Property As Is Enjoyed By White Citizens, And Shall Be Subject To Like Punishment; Inequality Discrimination By Not Being Offered "Alternative Settlement Vehicles" Such As Deferred Prosecution Agreements And Non-Prosecution Agreements To Resolve Federal Crimes; Smith Was Deprived Equal Protection Of The Law And Equity In A Court Of Law

LEGAL STANDARD

- Denied "Full and Equal benefit of law"
  JONES V. POINDEXTER, 903 F.2d 1006, 1990 U.S. App. LEXIS 8579 (4TH CIR. 1990)

- 994 F.3d 1244; In Re Wild April 15, 2021 (11TH CIR. 2021
  "SEE ATTACHED"

The DOJ's crooked deal with Epstein effectively shut down investigations into his child sex trafficking ring and protected his co-conspirators in other states. Justice has not been served,' Sasse added."). OPR's Report is viewed as a "whitewash," "letting everyone off the hook," "offensive," "hurtful," and "like another slap in the face to the victims." James Hill, Key takeaways from the Justice Department review of Jeffrey Epstein sweetheart deal, ABC News (Nov. 16, 2020), available at https://abcnews.go.com/US/key-takeaways-justice-department-review-jeffrey-epstein-sweetheart/story?id=74222922. Given the OPR Report, it is hardly surprising the victims continue to pursue this civil suit to discover and unravel the mystery of why the prosecutors not only signed such a sweetheart plea deal for the billionaire Epstein in the first place but did so in secret and then for nearly a year took great efforts to hide the Agreement by affirmative misrepresentations to the victims and their counsel too.

13TH

Over the last fifteen years, there has been a dramatic increase in the use of pre-indictment "**alternative settlement vehicles**" **{994 F.3d 1327}** such as deferred prosecution agreements and non-prosecution agreements to resolve federal crimes. See Cindy R. Alexander & Mark A. Cohen, The Evolution of Corporate Criminal Settlements: An Empirical Perspective on Non-Prosecution, Deferred Prosecution, and Plea Agreements, 52 Am. Crim. L. Rev. 537, 537-40 & n.14 (2015).11 Under the Majority's ruling, victims have no CVRA remedy when a prosecutor secretly negotiates these pre-charge agreements in the absence of federal charges.

11

In 2020 alone, the DOJ executed 32 agreements to defer prosecution for corporate criminality. See Duke University School of Law & University of Virginia's Legal Data Lab, Data and Documents, Corporate Prosecution Registry, https://corporate-prosecution-registry.com/browse/; see also 2019 Year-End Update on Corporate Non-Prosecution Agreements and Deferred Prosecution Agreements, Gibson Dunn (Jan. 8, 2020), https://www.gibsondunn.com/2019-year-end-npa-dpa-update/ (stating that the DOJ's use of NPAs and DPAs in white collar cases rose from 2 in 2000 to 31 in 2019 and has been normalized "[a]cross [a]gencies").

The Majority's ruling also exacerbates disparities between wealthy defendants and those who cannot afford to hire well-connected and experienced attorneys**{2021 U.S. App. LEXIS 187}** during the pre-charge period. Most would-be defendants lack resources and usually have no counsel during this pre-charge period. Consequently, they do not have the pre-charge opportunity to negotiate the kind of extremely favorable deal that Epstein received. This sort of two-tiered justice system-one in which wealthy defendants hire experienced counsel to negotiate plea deals in secret and with no victim input-offends basic fairness and exacerbates the unequal playing field for poor and wealthy criminal defendants



© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

51874510

VII. Smith's Fourteenth Amendment Right Was Violated When His Trial Counsel Was Ineffective For Not Arguing Or Stating How Smith's Deprivation Of His Liberty And Property Without Due Process Of Law; Smith's Detained Due To False, Fabricated Evidence And Statements Which Resulted From Law Enforcement Actions [Exhibit A]; Smith Was Denied Due Process Of Law When The Government Suppressed Favorable Evidence To His Defense [DE 75]; Smith Was Deprived Due Process Of Law When The Government Failed To Disclose Exculpatory Evidence And Impeaching Material [DE 75]; Smith Was Deprived Due Process Of Law In A Fair Adversary Process; "Larrison Test"; Deprived Equal Protection Of the law

LEGAL STANDARD

- "Fourteenth Amendment Due Process is violated when defense counsels ineffectiveness is so blatant as to render entire trial fundamentally unfair, and states complete failure to provide fair and impartial justice constitute "state action"."
  Loftis V. Estelle, 515 F.2d 872, 1975 U.S. App. LEXIS 13785 (5TH Cir. 1975), U.S. App. LEXIS 12412 (5TH Cir. 1975)
- "In Provision of 14TH Amendment that no state shall deprive any person of life, liberty, or property without due process of law, embraces not only right of person to be free from physical restraint, but right to be free in enjoyment of all his faculties as well.
  Grosjean V. American Press Co. 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660, 1 Media L. Rep. (BNA) 2685, 1936 U.S. LEXIS 524 (1936)
- "Arrestee's 14TH Amendment rights were violated by fire marshal who knowingly transmitted false statements over National Crime Information Center causing extended incarceration."
  Clanton V. Cooper, 129 F.3d 1147, 1997 Colo. J.C.A.R. 2896, 1997 U.S. App. LEXIS 32154 (10TH Cir 1997
- "Due Process Of Law requires that no person shall be tried and convicted of offense unless he is given reasonable notice of charges against him and is afforded

opportunity to examine adverse witnesses."
WILLIAMS V. NEW YORK, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, 1949 U.S. LEXIS 2308, reh'g denied, 337 U.S. 961, 69 S.Ct. 1529, 93 L.Ed 1760, 1949 U.S. LEXIS 2142 (1949)

- "Failure to accord accused fair hearing violates even minimal standards of due process." IRVIN V. DOWD, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed. 2d 751, 1 MEDIA L. REP. (BNA) 1178, 1961 U.S. LEXIS 1023 (1961); TURNER V. LOUISIANA, 379 U.S. 466, 85 S.Ct 546, 13 L.Ed. 2d 424, 1965 U.S. LEXIS 2007 (1965)
- A defendant is also entitled to access to impeaching information in the confidential file of an informant - witness.
- "Undisclosed benefits that witness received added significantly to disclosed benefits and would have cast shadow on witnesses credibility."
BENN V. LAMBERT, 283 F.3d 1040 (9TH CIR. 2002)
- "Government failed to disclose allegedly exculpatory documents relating to impeachment of informant witness who was placed on suicide watch, and might have been less credible."
UNITED STATES V. DUMAS, 207 F.3d 11 (1ST CIR. 2000)
- "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."
BORDENKIRCHER V. HAYES, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed 2d 604 (1978)
- "And the Supreme Court explained in Giglio V. UNITED STATES that due process rights articulated in Brady are also violated when "undisclosed evidence" establishes that the prosecution knowingly relied on perjured and material testimony."
DAVIS V. TERRY, 465 F.3d 1249, 1253 (11TH CIR. 2006) (citation omitted); see GIGLIO, 405 U.S. at 154-55
- In Giglio V. UNITED STATES, ..., the Supreme Court held that when the prosecution solicits or fails to correct known false evidence, due process requires a new trial where "the false testimony could in any reasonable likelihood have affected the judgment of the jury." 405 U.S. at 154. Giglio error, which "is a species of Brady error",

exists "when the undisclosed evidence demonstrates that the prosecutions case included perjured testimony and that the prosecution knew or should have known, of the perjury."'

VENTURA V. ATTORNEY GENERAL, 419 F. 3d 1269, 1276-77 (11TH CIR. 2005) (quoting UNITED STATES V. AGURS, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)

• "In order to safeguard a defendants due process rights, certain types of evidence require disclosure. Among these is exculpatory evidence that is material to guilt or punishment."

BRADY V. MARYLAND, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed 2d 215 (1963); See e.g., MOON V. HEAD, 285 F. 3d 1301 (11TH CIR. 2002)

• "Favorable evidence for Brady purposes includes both exculpatory and impeachment evidence. See GIGLIO V. UNITED STATES, 92 S. Ct. 763 (1972); JORDAN, 316 F. 3d at 1253. Evidence "is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." See UNITED STATES V. LLOYD, 992 F. 2d 348, 351 (D.C. CIR. 1993)

• "In GIGLIO V. U.S., 405 U.S. 150 (1972), the Supreme Court extended Brady to disclosure of impeachment material. UNITED STATES V. SINGLETON, No. 22-14048, 2023 WL 2164588, at *3 (S.D. Fla. Feb. 13, 2023). See JORDAN, 316 F. 3d at 1253. Under Giglio, "when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility" justifies a new trial. Giglio, 405 U.S. at 153-54. The difference between Brady material and Giglio material is that Brady information is exculpatory, meaning it "relates to evidence which directly tends to lessen a defendants guilt," while Giglio material is impeaching, meaning that it relates to "witness credibility type evidence of a collateral nature... indirectly making it less likely that the defendant is guilty." See UNITED STATES V. HOPKINS, 2008 WL 4453583, at *2 (E.D. Cal. Oct. 3, 2008)

The purpose of Giglio and its progeny is "to insure that the jury knows the facts that might motivate a witness in giving testimony."
Brown v. Wainwright, 785 F.2d 1457, 1465 (11th Cir. 1986) (quoting Smith v. Kemp, 715 F.2d 1459, 1467 (11th Cir.), cert. denied, 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed. 2d 699 (1983)

## VIII. Rule 88.10 Criminal Discovery

- The Government failed to comply with the Standing Discovery Order which was placed on April 7th, 2023. [DE 11]
- The Government failed to disclose evidence and comply with Rule 88.10 (Criminal discovery) (c); (d); (j) (O: i & 2) [DE 75; email exchange w/AUSA Andie Klepach]

(c) The Government shall reveal to the defendant and permit inspection and copying of all information and material known to the Government which may be favorable to the defendant on the issues of guilt or punishment within the scope of Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976).

(d.) The Government shall disclose to the defendant the existence and substance of any payments, promises of immunity, leniency, preferential treatment, or other inducements made to prospective government witnesses, within the scope of Giglio v. U.S., 405 U.S. 150 (1972), and Napue v. Illinois, 360 U.S. 264 (1959) [DE 75]

(j.) The Government shall have transcribed the grand jury testimony of all witnesses who will testify for the Government at the trial of this cause, preparatory to a timely motion for discovery.

(0) Schedule of Discovery

(1.) Discovery which is to be made in connection with a pre-trial hearing other than a bail or pre-trial detention hearing shall be made not later than forty-eight (48) hours prior to the hearing. Discovery which is to be made in connection with a bail or pre-trial detention hearing shall be made not later than the commencement of the hearing.

(2.) Discovery which is to be made in connection with trial shall be made not later than fourteen (14) days after the arraignment, or such other time as ordered by the court.

IX. Federal Rules of Criminal Procedure: Rule 16, 41, 603, 608, 801 (d)(1)

• The Government violated Rule 16, 41, 603, 608, 801 (d)(1) and convicted Petitioner of multiple counts while in violation, and or obtaining evidence and statements in violating the above stated RULES.

X. DEFINITIONS

Equity - Fairness; Equal; Equitable

Equitable: An abstract term for fair, reasonable or proper.

(2) Pertaining to rights and duties which historically were enforced only in a court of equity.

(3) Pertaining to preventive and remedial justice which is appropriate under the the unique facts of the problem case, and which is rendered by a court, in contradistinction to common-law justice

Equal Protection of the laws - A flexible term for the guaranty of uniformity of treatment under state law, of all persons in like circumstances. U.S. Const. Amend. XIV It usually is applied to civil and political rights.

Equality - the condition of persons when one has no unfair advantage over another.

(2) Coequality, uniformity, or likeness

§ 1981 Equal Rights - Full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment.

Civil rights - The rights of citizens of the US guaranteed by the Const. of the U.S particularly Amendments I, XIII, XIV and XV
(2) The rights of a citizen
Citizen - Flexible term descriptive of a person who has the freedom and privileges of a city, county, State, or nation. (2) A person who is a member of a body politic, owes allegiance to its govt., and may claim the protection of its govt.
Citizen of the U.S. - Any person born in the U.S or born out of the U.S., if his parents were citizens, or are of foreign birth and parentage who has become naturalized. All persons born or naturalized in the U.S., and subject to the jurisdiction thereof, are citizens of the U.S and of the state wherein they reside. U.S. Const. Amend. XIV, Sec. 1
Contravention - An act done in violation of a legal obligation.
filiation - the relation of a child to its father
right - legally protected privilege or relationship of a person
impeach - to challenge the credibility or validity of;
breach - a breaking or violation
pursuit of happiness - an imprecise term for personal freedom or liberty.
remedy - the legal means to declare or enforce a right or to redress a wrong.
quash - to annul or suppress, e.g., an indictment, a conviction, or an order.

5. Petitioner has no other remedy for release from His unlawful detention other than this Petition For A Writ Of Habeas Corpus.

6. No other applications for a writ of habeas corpus have previously been made to any other Federal Court or Judge.

PRAYER

For the reasons just stated, Petitioner prays that:

A. This court issue a writ of Habeas Corpus commanding the UNITED STATES OF AMERICA to produce the body of the Petitioner XAVIER LATRELL SMITH before this court at a time and place to be specified in that writ;

B. This court conduct a hearing and inquiry into the cause of the Petitioners detention; and

C. Following the hearing, Petitioner be ORDERED discharged from the detention and restraint described in this application.

UNDER PENALTIES OF PERJURY, I declare that I have prepared and read the forgoing document and the facts therein are true and correct as stated.

[signature]
Petitioner

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 25 2024, a true and correct copy of the foregoing was filed and served via first class postage

Respectfully submitted,

By: [signature]

XAVIER LATRELL SMITH #51874510
FDC MIAMI
P.O. BOX 019120
Miami, Fl 33101

Xavier Smith [illegible]
MIAMI FDC
P.O. BOX 019120
MIAMI, FL 33101

UNITED STATES POSTAL SERVICE. pitney bowes

USPS TRACKING #

9488 8090 0027 6352 0543 50

Label 400-PB, Oct. 2015

FRI 26 JUL 2024
Royal Palm P&DC 330

LEGAL MAIL

REC'D BY [illegible] D.C.
JUL 30 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI